## Case No. 25-60518

# *IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT*

*Gloria Celeste Young, Individually and
on behalf of all others similarly situated
Plaintiff – Appellant*

*v.*

*State Farm Fire and Casualty Company
Defendant – Appellee*

_____

Appeal from the United States District Court

For the Southern District of Mississippi

USDC No. 2:23-cv-00175 HSO-MTP

_____

## APPELLANT'S BRIEF

_____

David M. McMullan, Jr., MS #8494          Ned A. Nelson, MS #105712
Barrett Law Group, P.A.                   Mark A. Nelson, MS #3808
404 Court Square, N.                      Nelson Law PLLC
Lexington, MS 39095                       7 Woodstone Pl., Ste. 7
                                          Hattiesburg, MS 39402

Counsel for Appellants

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| State Farm Fire and Casualty Company | Amanda Barbour and Harrison Smith of Butler Snow, L.L.P. Ridgeland, MS |
| State Farm Fire and Casualty Company | Joseph Cancila, Nick Kahlon, and Jacob L. Kahn of Riley Safer Holmes & Cancila, L.L.P. Chicago, IL |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Gloria Young | Anthony Sakalarios and Chuck Blackwell of Sakalarios, Blackwell & Shock, P.L.L.C. Hattiesburg, MS |
| Gloria Young | Nicholas Sakalarios of Sakalarios Law, Hattiesburg, MS |
| Gloria Young | John W. ("Don") Barrett and David McMullan of Barrett Law Group, P.A. Lexington, MS |
| Gloria Young | John Deakle, Ronald V. Johnson, IV, Russell L. Johnson and Richard L. LaJaunie of Deakle-Johnson Law Firm Hattiesburg, MS |
| Gloria Young | Mark Nelson and Ned Nelson of Nelson Law P.L.L.C. Hattiesburg, MS |
| Gloria Young | Patrick W. Pendley of Pendley, Baudin & Coffin, LLP, Plaquemine, LA |
| Gloria Young | Alvah H. Pasley and D. Chad Nuce of Pasley, Nuce, Mallory & Davis, LLC, Thomaston, GA |
| Gloria Young | Jubal L. Hamil of Deakle, Sholtis & Hamil, LLC, Mobile, AL |

| Other Interested Parties: | Counsel for Interested Parties: |
| --- | --- |
| Honorable Halil Suleyman Ozerden, Chief Judge of the Southern District of Mississippi | |

ii

| Honorable Keith Starrett, District Judge | |
| Honorable Michael Parker, Magistrate Judge | |

S/Ned Andrew Nelson
Attorney of record for Appellant

# STATEMENT REGARDING ORAL ARGUMENT

The Plaintiff-Appellant Gloria Celeste Young respectfully requests oral argument in this case. This appeal raises significant questions of Mississippi insurance law and Plaintiff-Appellant believes that adjudication of those issues would be aided by oral argument.

# TABLE OF CONTENTS

Contents                                                          Page(s)

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS.................................................................................v

TABLE OF AUTHORITIES ............................................................................ vi

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUES.....................................................................1

STATEMENT OF THE CASE.........................................................................2

SUMMARY OF THE ARGUMENT ...............................................................10

ARGUMENT ..................................................................................................11

CONCLUSION................................................................................................39

CERTIFICATE OF SERVICE ........................................................................40

CERTIFICATE OF COMPLIANCE...............................................................40

# TABLE OF AUTHORITIES

**Cases…………………………………………………………Pages(s)**

*Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.,*
  352 F. 3d 254, 260 (5th Cir. 2003)……………………………………..12

*Andres Trucking Co. v. United Fire & Cas. Co.,*
  488 P. 3d 425 (Colo. Ct. App. 2018)…………………………………..35

*Andrew Jackson Life Ins. Co. v. Williams,*
  566 So. 2d 1172, 1185 (Miss. 1990)…………………………………...24

*Antero Re. Corp. v. C & R Downhole Drilling, Inc.,*
  2019 U.S. Dist. LEXIS 244246, No. 4:16-cv-668-Y
  (N.D. Tex., Sept. 13, 2019)……………………………………………..30

*Argonaut Great Cent. Ins. Co. v. Greenville Pub. Sch. Dist.,*
  2021 U.S. Dist. LEXIS 245402 *10,
  No. 4:20-cv-155-DMB-DAS (N.D. Miss., May 13, 2021)………………14

*Atkins v. City of Chicago*, 631 F. 3d 823, 832 (7th Cir. 2011)………………..29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)…………………...12, 29

*Blum's Furniture Co. v. Certain Underwriters
  at Lloyds London*, 459 Fed. App'x 366, 368-69
  (5th Cir. Jan. 24, 2012)……………………………………………….17

*Bosarge v. Miss. Bureau of Narcotics,*
  796 F. 3d 435, 440 (5th Cir. 2015)……………………………………28

*Brar Hosp. Inc. v. Mt. Hawley Ins. Co.,*
  2023 U.S. App. LEXIS 30425 at *6 (11th Cir. 2023)……………………...13

*Burrell v. Allstate Prop. & Cas. Ins. Co.,*
   2014 U.S. Dist. LEXIS 137251 at \*5
   (S.D. Miss., Sept. 29, 2014)…………………………………………………18

*Burrell v. Allstate Prop. & Cas. Ins. Co.,*
   2015 U.S. Dist. LEXIS 74473 at \*3,
   No. 3:13-cv-492-CWR-FKB (S.D. Miss., June 9, 2015)………………..16, 18

*Burrell v. Allstate Prop. & Cas. Ins. Co.,*
   2016 U.S. Dist. LEXIS 102592 (S.D. Miss. Aug. 4, 2016)……………..18, 19

*Cheatham v. Allstate Vehicle & Prop. Ins. Co.*,
   2021 U.S. Dist. LEXIS 179700 (S.D. Miss, Sept. 21, 2021)……………….26

*City of Jackson v. Estate of Stewart ex rel. Womack,*
   908 So. 2d 703, 711 (Miss. 2005)……………………………………………25, 26

*Compliance Source, Inc. v. GreenPoint*
   *Mortg. Funding, Inc.*, 624 F. 3d 252, 259 (5th Cir. 2010)……………….....16

*Comprehensive Med. Ctr. v. State Farm Mut. Auto. Ins.,*
   2025 U.S. app. LEXIS 2699 at 1 (9th Cir. 2025)……………………………13

*Cont'l Cas. Co. v. Allstate Prop. & Cas. Ins. Co.,*
   235 So. 3d 40, 50 (Miss. 2017)………………………………………………34

*Cont'l Cas. Co. v. Hester*, 360 So. 2d 695, 697 (Miss. 1978)…………………..34

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
   748 F. 3d 249 (5th Cir. 2014)………………………………………………13

*Dwyer v. Fid. Nat. Prop. & Cas. Ins.*,
   565 F. 3d 284, 286-87 (5th Cir. 2009)……………………………………..13

*Edwards v. Guideone Mut. Ins. Co.,*
   2010 U.S. Dist. LEXIS 34223 \*9-10
   (S.D. Miss., April 7, 2010)……………………………………………...35

vii

*Estate of Minor v. United Servs. Auto. Ass'n,*
   247 So. 3d 1265 (Miss. Ct. App. 2017)…………………………………………22

*Franklin Fire Ins. Co. v. Brewer,*
   173 Miss. 317 (Miss. 1935)……………………………………………………...18

*Garcia v. State Farm Lloyds*, 514 S.W. 3d 257, 273-74
   (Tex. App.-San Antonio 2016, pet. Denied)
   (Texas Court of Appeals)………………………………………………………...17

*Grajales v. P.R. Ports Authority,*
   682 F. 3d 40, 46 (1st Cir. 2012)…………………………………….28, 29, 30, 31, 32

*Guerra v. Castillo*, 82 F. 4th 278, 284 (5th Cir. 2023)………………………………..11

*Hall v. State Farm Lloyds,*
   2021 U.S. Dist. LEXIS 210188 *3,
   No. H-21-1769 (S.D. Tex., Nov. 1, 2021)……………………………………..15

*Hartford Lloyd's Ins. Co. v. Teachworth,*
   898 F. 2d 1058, 1061-1062 (5th Cir. 1990)…………………………………………18

*Hicks v. United States*, 2025 U.S. Dist. LEXIS 177737,
   No. 24-395-SDD-RLB (M.D. La., Sept. 11, 2025)……………………………….31

*Holloway v. Nat'l Fire & Marine Ins. Co.,*
   360 So. 3d 671, 674-75 (Miss. Ct. App. 2023)………………………………...36

*Home Ins. Co. v. Greene*, 229 So. 2d 576 (Miss. 1969)………………………32, 33

*Howard v. CitiMortgage, Inc.,*
   No. 1:13-cv-543-KS-MTP, 2014 U.S. Dist. LEXIS 167842 *26
   (S.D. Miss. Dec. 2, 2014)………………………………………………………25, 26

*Hughes v. The Tobacco Inst., Inc.,*
   278 F. 3d 417, 420 (5th Cir. 2001)……………………………………………12

*In re Waggoner Cattle, LLC*, 2022 Bankr. LEXIS 2873,
   Civil Action No. 2:19-cv-98-Z (N.D. Tex., Apr. 28, 2022)…………………..31

*J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.,*
   723 So. 2d 550, 552 (Miss. 1998)……………………………………………….34

*Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)…………………………...11

*Jones v. State Farm Mut. Auto. Ins. Co.,*
   2025 U.S. Dist. LEXIS 133204 at *13,
   No. 1:23-cv-326-HSO-RPM (S.D. Miss. July 14, 2025)…………36, 37, 38, 39

*Kuehn v. State Farm Fire & Cas. Co.,*
   2009 U.S. Dist. LEXIS 74691,
   No. 1:08-CV-577-LTS-RHW (S.D. Miss. Aug. 17, 2009)…………………….35

*Madrid v. Wells Fargo Bank, N.A.,*
   2017 U.S. Dist. LEXIS 221451 *8, No. EP-14-152-DCG
   (W.D. Tex. March 17, 2017)…………………………………………………29, 30

*Mainali Corp. v. Covington Specialty Ins. Co.,*
   872 F. 3d 255 (5th Cir. 2017)……………………………………………………..17

*McCarver v. Bogen*, 299 So. 3d 844, 848 (Miss. Ct. App. 2020)………………...24

*Miss. Farm Bureau Cas. Ins. Co. v. Powell,*
   336 So. 3d 1079, 1084 (Miss. 2022)……………………………………………..34

*Mixon v. Golden Rule Ins. Co.,* No. 2:12-cv-234-KS-MTP,
   2014 U.S. Dist. LEXIS 7760 (S.D. Miss., Jan. 22, 2014) …………………….25

*Munn v. National Fire Ins. Co.,* 237 Miss. 641, 646 (Miss. 1959)…………...16, 18

*Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W. 3d 840,
   2017 Tex. App. LEXIS 4664, 2017 WL 2258243 at *3-4
   (Tex. App.-Houston [14th Dist.] May 23, 2017, no pet.h.)
   (Texas Court of Appeals)…………………………………………………...17

*Ortiz v. State Farm Lloyds*, 589 S.W. 3d 127, 129 (Tex. 2019)…………………17

*Price v. Drexel Burnham Lambert, Inc.,*
   791 F. 2d 1156, 1159 (5th Cir. 1986)…………………………………………12, 13

*Quibodeaux v. Nautilus Ins. Co.,*
   655 Fed. App'x 984, 986-87 (5th Cir. July 7, 2016)…………………………17

*Ragas v. State Farm Fire and Casualty*,
   2008 U.S. Dist. LEXIS 10285,
   No. 07-1143 SECTION N(1), (E.D. La. Feb., 11, 2008)……………………..14

*Randel v. Travelers Lloyds of Tex. Ins. Co.,*
   9 F. 4th 264, 267 (5th Cir. 2021)………………………………………………16

*Reed v. Goertz,* 136 F. 3d 535, 542 (5th Cir. 2025)…………………………….12

*Ross v. State Farm Fire & Cas. Co.,*
   2022 U.S. Dist. LEXIS 169425,
   No. 3:21-cv-470-KHJ-MTP (S.D. Miss., Sept. 20, 2022)……………………..21

*Sanchez v. Prop. & Cas. Ins. Co. of Hartford*,
   2010 U.S. Dist. LEXIS 6295 *13-14,
   No. H-09-1736 (S.D. Tex., Jan. 27, 2010)…………………………………….14

*Sapp v. Mem'l Hermann Healthcare Sys.,*
   406 Fed. Appx. 866, 870 (5th Cir. 2010)…………………………………….12

*Skender v. State Farm Fire & Cas. Co.,*
   2024 U.S. Dist. LEXIS 27196,
   Cause No. 1:22-cv-02054-JMS-KMB (S.D. Ind. 2024)………………………35

*Stewart v. Gulf Guad. Life Ins. Co.,*
   864 So. 2d at 192, 200 (Miss. 2002)………………………………………..24

*Sweet Valley Missionary Baptist Church*
   *v. Alfa Ins. Corp.,* 192 So. 3d 990 (Miss. 2016)……………………………17

*Thompson v. Wal-Mart Stores Tex., LLC.,*
   706 F. Supp. 3d 689, 696 (S.D. Tex., Dec. 13, 2023)……………………..30, 31

*United Servs. Auto. Ass'n v. Estate of Minor*,
   2024 Miss. LEXIS 331, No. 2023-CA-00049-SCT,
   (Miss., Dec. 5, 2024)……………………………………21, 22, 23, 27, 36

x

*United Servs. Auto. Ass'n v. Est. of Minor*,
   2025 Miss. LEXIS 277 (Miss., Oct. 2, 2025)…………………………………22

*United States Fid. & Guar. Co. of Miss. v. Martin*,
   998 So. 2d 956 (Miss. 2008)……………………………………………..34

*Uzoh v. Walmart Assocs.*,
   2024 U.S. Dist. LEXIS 190722 at *5,
   No. 1-23-cv-966-JRN (W.D. Tex., Oct. 21, 2024)………………….…..30, 31


## Statutes and Other Authorities

Miss. Code Ann. § 11-1-65(1)(a)(Rev. 2019)…………………………………36

Miss. Code Ann. § 75-3-311 (1993)…………………………………………24

28 U.S.C. § 1332(d)…………………………………………………………...1

28 U.S.C. § 1291……………………………………………………………..1

Fed. R. Civ. P. 8(a)…………………………………………………………..20

Fed. R. Civ. P. 12(c)…………………………………………………………24

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction as provided by the Class Action Fairness Act, 28 U.S.C. §1332(d). Plaintiff Gloria Young is a citizen of the State of Mississippi, and the Defendant State Farm Fire and Casualty Company is a corporate citizen of the State of Illinois. The Plaintiff brings this civil class action for all persons similarly situated in the State of Mississippi. The district court had jurisdiction since the controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

This Court has jurisdiction under 28 U.S.C. §1291, since a timely Notice of Appeal was filed on September 23, 2025 (ROA. 2862-64) from a final decision of the District Court entered on September 4, 2025 (ROA. 2826-46) and Final Judgment (ROA. 2847).

## STATEMENT OF THE ISSUES

I.    Under Mississippi law, can court-ordered appraisal resolve questions of insurance policy interpretation and coverage?

II.    Under Mississippi law, can court-ordered appraisal resolve claims for bad faith, negligence and gross negligence?

III.    Does payment and acceptance of a court-ordered appraisal award preclude claims for accrued interest and extracontractual damages?

1

IV.    Should a motion for judgment on the pleadings be considered after conclusion of discovery and the filing of a motion for class certification and motion for summary judgment?

V.    Does State Farm Fire and Casualty Company have an arguable basis to adjust partial loss structural damage claims using new construction labor efficiency settings in estimating losses for repairs?

## STATEMENT OF THE CASE

This case involves claims that State Farm Fire and Casualty ("State Farm") negligently adjusted property damage claims by intentionally manipulating its estimating software. (ROA. 463). To estimate and adjust property claims, State Farm uses an online software known as "Xactimate," which is provided by Xactware Solutions, Inc ("Xactware"). (ROA. 465). Xactimate provides real-time market prices for labor and materials, specific to a geographic area, to estimate the value of a structural damage loss. (ROA. 465-66). Xactimate is widely used across the insurance industry by carriers, adjusters, contractors, and appraisers. (ROA. 466). State Farm uses Xactimate to determine Actual Cash Value ("ACV") and Replacement Cost Value ("RCV"). Xactimate estimates include line-item entries detailing the materials and labor necessary to perform the repairs. (ROA. 467).

One variable within Xactimate is the Labor Efficiency Setting ("LES") which is classified as either "New Construction" ("NC") or

"Restoration/Service/Remodel" ("R/S/R"). (ROA. 465-69). The default LES in Xactimate is R/S/R as the majority of insurance claims involve restoration or repairs to damaged property. (ROA. 466). Departure from the default LES requires users to manually "toggle" or the setting from R/S/R to NC. (ROA. 466). The NC LES is described by Xactware as:

> The New Construction option provides a cost for each line item based upon the **most efficient labor productivity available**. **This option is intended to be used for true new construction applications or for jobs in which a total "ground-up" rebuild is necessary. Additionally, it is possible that some portions of a large partial loss may be addressed using this efficiency setting.** For example, as the rebuild process progresses, it is possible that a certain phase may be reached in which the remaining portions of the repair are more in line with a new construction scenario.

(ROA. 544)(emphasis added). The NC LES assumes "the most efficient labor productivity available" and thus, results in lower labor costs per line item of the estimate. *Id*. Xactware describes three scenarios wherein the NC LES can be appropriately used: a) in claims involving "true new construction," b) those that require "a total 'ground-up' rebuild," and c) phases or "portions of a large partial loss." (ROA. 544). Concerning the R/S/R LES, Xactware states:

> **The Restoration/Service/Remodel option is for jobs other than total losses or new construction.** When selected, this option provides a cost for each line item based upon a labor productivity that includes such things as drive time, mobilization costs, material delivery, and the overall reduction in productivity that occurs when repair professionals address the complex issues found in restoration and remodeling jobs (for example, matching drywall texture or working in an occupied home).

(ROA. 544)(emphasis added). State Farm adjusts some, but not all, partial loss structural damage claims using the NC LES. (ROA. 548).

State Farm's practice of implementing the NC LES haphazardly in some, but not all partial losses is inconsistent with Xactware guidance and is not disclosed to insureds. The policy makes no reference to labor efficiency settings. (ROA. 544). State Farm adjusts partial loss structural damage claims using the NC LES on the entirety of the loss, not a "portion of a large partial loss." (ROA. 544). This practice has deprived Mississippi insureds of policy benefits.

## I.    Factual Background

Gloria Celeste Young (herein, "Young") insured her home with State Farm. (ROA. 491-529);(ROA. 530-42). Young's Coverage A dwelling insurance, adjusted for inflation, provided a total Coverage A limit of $326,808.00. (ROA. 532). Including the Option ID- Increased Dwelling Coverage, Young's dwelling was insured for $388,908.[1] (ROA. 527; ROA. 533).

On January 21, 2023, Young's home was struck by lightning, resulting in fire, smoke and water damage. (ROA. 465). Young notified State Farm of the loss the following day. (ROA. 465). State Farm inspected the home within a week of the loss but did not provide Young an estimate until April 17, 2023, eighty-seven

---

[1] Exclusive of other coverages such as other structures, loss of use, or additional living expenses coverage, or personal property coverage, not at issue in this litigation. (ROA. 527).

4

days after the loss. (ROA. 552-619). With its estimate, State Farm issued Actual Cash Value ("ACV") payment to Young in the amount of $149,279.53. (ROA. 554). State Farm's ACV payment was based on its estimate, generated using the NC LES on the entirety of the loss estimate. (ROA. 552-619; ROA. 544). State Farm's estimate did not designate Young's loss as being "true new construction," "a total 'ground-up' rebuild," or as a being "a large partial loss." (ROA. 544).

Immediately after the loss, Young hired T. Ryals & Co. Restoration ("Ryals") as her contractor. By January 27, 2023, Ryals had inspected the loss and provided State Farm an estimate for the restoration of Young's home totaling $387,967.79. (ROA. 661-690). Ryals separately estimated necessary mitigation and demolition work in the amount of $60,391.71 and transmitted the same to State Farm. (ROA. 691-713). Combined, Ryals' total estimate of the loss was $448,359.50, well in excess of the available coverage. (ROA. 661-690; 691-713). Ryals' estimates of Young's loss utilized the default R/S/R LES. (ROA. 661-690). Since January 27, 2023, State Farm has known Young's estimated value of the loss exceeded the available coverage. (ROA. 875 and 620-60).

The use of the NC LES across the hundreds of entries that make up an estimate suppresses tens of thousands of dollars in policy benefits payable to the insured. (ROA. 472).

Young's loss was neither a total "ground-up rebuild" nor was it "true new construction." (ROA. 544). Young's loss inherently required the restoration of the existing structure. The practical realities of Young's loss required contractors to work with, around, and connect to the existing components of the home. State Farm's failure to fully indemnify Young required her to expend personal savings to rebuild her home and to become personally indebted to her contractor.

## II.    Procedural Background

Young filed suit on November 13, 2023. (ROA. 26). State Farm filed a Motion to Dismiss and a Motion to Strike Plaintiff's Nationwide Class Allegations on January 10, 2024. (ROA. 349 and 428-31). Young filed an Amended Complaint which alleged a Mississippi class. (ROA. 463-90).[2] The Amended Complaint alleged four causes of action against State Farm, Breach of Contract, Negligence and Gross Negligence, Bad Faith, and Declaratory Judgment and Relief. (ROA. 481-88). Young specifically sought "compensatory damages for her individual claims for the amount she is owed pursuant to the Policy as a result of the loss." (ROA. 488). Further, Young sought "compensatory damages for all sums depreciated as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiff and members of the class." (ROA. 488).

---

[2] Following the filing of the Amended Complaint, the Court entered an Order finding as Moot both the Motion to Dismiss and Motion to Strike Plaintiff's Nationwide Class Allegations. (ROA. 714).

State Farm filed a second motion to dismiss. (ROA. 715). On April 3, 2024, while the Motion to Dismiss was pending, State Farm filed its Motion to Compel Appraisal. (ROA. 866-69). State Farm did not seek to compel appraisal for over a year following the loss. (ROA. 866-69). Plaintiff opposed the Motion to Compel Appraisal on various grounds. (ROA. 1218-34). By January 2024, Young's home had been rebuilt at a total cost of $369,797.59 with invoices being provided to State Farm. (ROA. 907-52). In demanding appraisal, State Farm misrepresented these figures as being an "estimate" and not an invoice of actual costs incurred by Young. (ROA. 1069).

> Ryals' January 27, 2023 estimate, provided to State Farm, stated:
>
> This one was a bad fire. **I stopped writing my rebuild estimate due to limits** there is still plenty more I'm sure I could keep writing but if you have any questions or need anything else from me just let me know thanks.

(ROA. 875)(emphasis added). In demanding appraisal, State Farm misrepresented Ryals' statement to imply that his estimate was incomplete. (ROA. 1069). As of January 27, 2023, State Farm knew that Young's estimate of the damages exceeded the available coverage. (ROA. 661-690).

On August 12, 2024, the District Court entered its Order, granting the Motion to Compel Appraisal and staying the case for a period of 90 days. (ROA. 1251-61). Following a jointly filed status report by the Parties, the Court entered an Order on November 15, 2024, lifting the stay, directing State Farm to file its

7

Answer to the Amended Complaint by November 27th, and ordering the setting of a "prompt case management conference." (ROA. 1264).

State Farm filed its Answer on November 27, 2024. (ROA. 1269). Court ordered appraisal was concluded on November 30, 2024, and the resulting award was filed by State Farm on December 5, 2024. (ROA. 1315). On December 5, 2024, the Court entered its Case Management Order. (ROA. 1398). Per the Case Management Order, the deadline for Motions to Amend the Pleadings was January 6, 2025. (ROA. 1401). State Farm filed its Amended Answer to the Amended Complaint on December 18, 2024, adopting the appraisal award as an additional defense. (ROA. 1431).

Following the entry of the Case Management Order, the parties engaged in extensive discovery. In total, eleven depositions were taken, seven expert witnesses designated, numerous subpoenas issued, and 71,225 pages of documents produced.[3]

On February 10, 2025, after the pleadings were closed, State Farm moved for judgment on the pleadings based primarily on the appraisal award. (ROA. 1576). Young filed her Response in Opposition to the Motion for Judgment on the

---

[3] (ROA. 1289, 1292, 1402, 1405, 1408, 1416, 1419, 1422, 1425, 1428, 1507, 1510, 1513, 1516, 1519, 1522, 1525, 1528, 1531, 1534, 1537, 1540, 1543, 1546, 1549, 1552, 1555, 1558, 1567, 1570, 1573, 1576, 1715, 1724, 1726, 1729, 1738, 1740, 1775, 1778, 1781, 1808, 1814, 1841, 1847, 1861, 1892, 1901, 1903, 1934, 1965, 1974, 1999, 2003, 2018, 2026, 2029, 2597, 2600, 2603, 2606, 2609, 2806, and 2823).

Pleadings on March 12, 2025. (ROA. 1743). By April 2, 2025, the Motion for Judgment on the pleadings was fully briefed. (ROA. 1784).

Pursuant to the Amended Case Management Order, discovery closed on June 3, 2025. (ROA. 1565). On July 8, 2025, Young filed her Motion to Certify Class and Supporting Memorandum. (ROA. 2032 and 2159). The same day, State Farm filed its Motion for Summary Judgment and Supporting Memorandum. (ROA. 2218 and 2547). Young filed her Response in Opposition to Summary Judgment on August 8, 2025. (ROA. 2613 and 2644). State Farm filed its Response in Opposition to the Motion to Certify Class on August 12, 2025. (ROA. 2716 and 2761). The Case Management Order provided that Plaintiff's class certification reply was due by September 9, 2025. (ROA. 1565).

On September 4, 2025, over five months after the Motion for Judgment on the Pleadings had been fully briefed, the District Court granted State Farm's Motion for Judgment on the Pleadings. (ROA. 2826 and 2847). The District Court found and held that Young's claim for breach of contract was barred by the appraisal award; dismissed Young's claims for negligence and gross negligence; dismissed Young's claim for bad faith, finding State Farm had an arguable basis to use the NC LES to estimate Young's loss; and, dismissed Young's equitable claims for lack of standing. (ROA. 2826-46). On September 23, 2025, Young timely filed her Notice of Appeal. (ROA. 2862).

## SUMMARY OF THE ARGUMENT

The District Court's grant of State Farm's Motion for Judgment on the Pleadings effectively allows State Farm (and other property insurance carriers in Mississippi) to avoid its duties to reasonably, timely and fairly adjust claims by belatedly invoking appraisal. State Farm withheld payment on Young's claim for over a year; refused to communicate with Young; withheld uncontroverted and authorized settlement authority from Young; misrepresented the contents of the claims file to their insured; misled its insured and the Mississippi Department of Insurance; forced its insured to retain counsel and file suit; belatedly invoked appraisal only after forcing Young to file suit, forcing Young into an involuntary process; State Farm has improperly used appraisal to shield itself from claims for actual and extracontractual damages.

State Farm's conduct is not only contrary to Mississippi law but also runs afoul of the express language of appraisal provision of the policy itself. The policy is clear that appraisal serves a limited role only to "determine the amount of the loss…". (ROA. 514). Whether State Farm had an arguable basis to adjust Young's loss using the NC LES is not a pocketbook dispute subject to appraisal.

Young's claim does not present a dispute as to the "amount of loss" but a question of whether State Farm may apply a method of systematically reducing claims by using the NC LES without disclosing it in its policies. (ROA. 514). State

10

Farm's intentional and undisclosed manipulation of Xactimate is a common scheme to deprive policyholders of benefits to which they are entitled. Young's claims were not subject to appraisal from the outset. The District Court's Order compelling appraisal was respectfully, in error.

The District Court erred in granting Judgment on the Pleadings, avoiding review of the vast evidentiary record before it on Young's Motion for Class Certification and State Farm's Motion for Summary Judgment. (ROA. 2032 and 2159);(ROA. 2218 and 2547). Had the Court considered the evidentiary record, it would have revealed the specific intentional, tortious conduct perpetrated by State Farm against Young and the class of policyholders she represents. State Farm lacked arguable basis to adjust a partial loss using the new construction labor efficiency setting. Accordingly, the District Court's Grant of Judgment on the Pleadings should be reversed.

## ARGUMENT

### I.    Standard of Review

This Court reviews a district court's grant of judgment on the pleadings under Rule 12(c) *de novo. See Guerra v. Castillo,* 82 F.4th 278, 284 (5th Cir. 2023). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004). "[T]he central issue is whether, in the light most favorable

to the plaintiff, the complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5ᵗʰ Cir. 2001)(internal quotations omitted). This Court stated: "We accept all facts as pleaded and construe them in 'the light most favorable to the plaintiff.'" *Reed v. Goertz,* 136 F.3d 535, 542 (5ᵗʰ Cir. 2025); Citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although courts accept the factual allegations of the pleadings as true, a plaintiff must only plead enough facts to state a facially plausible claim to relief. *Twombly,* 550 U.S. at 570. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*.

A district court's determination of state law and interpretation of an insurance policy are reviewed *de novo*. *See*, *Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5ᵗʰ Cir. 2003). Additionally, the "decision to stay discovery pending a dispositive motion" are reviewed "for abuse of discretion." *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 Fed. Appx. 866, 870 (5ᵗʰ Cir. 2010).

Young opposed the Motion to Compel Appraisal as having been waived by State Farm. (ROA. 1221-28). The Fifth Circuit treats the issue of waiver, as a question of law which is subject to plenary review, while factual conclusions underlying that finding are reviewed for clear error. *Price v. Drexel Burnham*

12

*Lambert, Inc.*, 791 F. 2d 1156, 1159 (5th Cir. 1986). Although arbitration and appraisal are not synonymous, they are highly analogous, "This court reviews an order compelling arbitration *de novo*." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F. 3d 249, 256 (5th Cir. 2014). Other circuits hold that an order compelling appraisal is reviewed *de novo*. *See Brar Hosp. Inc. v. Mt. Hawley Ins. Co.*, 2023 U.S. App. LEXIS 30425 at *6 (11th Cir. 2023)(Per Curiam); *Comprehensive Med. Ctr. v. State Farm Mut. Auto. Ins.*, 2025 U.S. App. LEXIS 2699 at 1 (9th Cir. 2025)(Unpublished).

## II. Under Mississippi law, Appraisal Does Not Resolve Young's Claims.

As a matter of law, appraisal cannot resolve the issues in dispute in this case. State Farm's policy provides the following:

> h. Appraisal is **only available to determine the amount of the loss of each item in dispute**. The appraisers and the umpire have no authority to decide:
> (1)    **Any other questions of fact**;
> (2)    **Questions of law**;
> (3)    **Questions of coverage**;
> (4)    **Other contractual issues**; or
> (5)    To conduct appraisal on a class-wide basis.
> i. Appraisal is a non-judicial proceeding and does not provide for or require arbitration. Neither party will be awarded attorney fees. **The appraisal award may not be entered as a judgment in a court**.

(ROA. 1620)(emphasis added).

State Farm's demand for appraisal was untimely. (ROA. 866). "Like any other contract term, the appraisal provision may be waived by conduct inconsistent with the invocation of the provision." *Dwyer v. Fid. Nat. Prop. & Cas. Ins.*, 565 F.

13

3d 284, 286-87 (5th Cir. 2009). Young provided State Farm an estimate of the loss in the amount of $387,967.79 within a week of the loss. (ROA. 661-90). State Farm's estimate, provided over eighty days later, initiated the impasse between the parties. (ROA. 552-619). Concerning timeliness of a demand for appraisal, the "proper point of reference … is the point at which the insurer knew the appraisal clause could be invoked because of a disagreement over the amount of damages, that is, **the point of impasse** …" *Sanchez v. Prop. & Cas. Ins. Co. of Hartford*, 2010 U.S. Dist. LEXIS 6295 \*13-14, No. H-09-1736 (S.D. Tex., Jan. 27, 2010)(emphasis added).[4] State Farm could have invoked appraisal when its estimate was finalized in April 2023. (ROA. 552-619).

Appraisal becomes appropriate where a dispute exists as to the amount or extent of damages, "even if the dollar figures have not been static." *Argonaut Great Cent. Ins. Co. v. Greenville Pub. Sch. Dist.*, 2021 U.S. Dist. LEXIS 245402 \*10, No. 4:20-cv-155-DMB-DAS (N.D. Miss., May 13, 2021). Appraisal demanded by the insured eight months following the submission of a proof of loss has been found to be untimely and waived by the insured. *Ragas v. State Farm Fire and Casualty*, 2008 U.S. Dist. LEXIS 10285, No. 07-1143 SECTION N(1), (E.D. La. Feb., 11, 2008).

---

[4] In *Sanchez*, the District Court found a near one-year delay in demanding appraisal to be unreasonable and untimely. *Id*.

The appraisal clause of the policy requires that "at least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed." (ROA. 514). State Farm utterly failed to provide Young with any documentation of the "specific dispute as to the amount of loss." (ROA. 514). Courts have denied insureds' demand for appraisal for failure to comply with the itemization requirement of the appraisal clause. *Hall v. State Farm Lloyds*, 2021 U.S. Dist. LEXIS 210188 *3, No. H-21-1769 (S.D. Tex., Nov. 1, 2021).

The District Court found and held that Young's breach of contract claim was barred by the appraisal award. (ROA. 2837). In doing so, the District Court commented on the subjective findings and conclusions of the respective appraisers. (ROA. 2839-42). Additionally, the District Court referred to Young's acceptance of the appraisal award as voluntary and "agreed to." (ROA. 2840). Lastly, the District Court:

> [N]otes that the agreed Appraisal was prepared using a "New Construction" labor efficiency setting, the very same efficiency setting which Plaintiff claims was improper. In the Court's view, this means the Appraisal resolved, by way of the parties' agreement, any question of what labor efficiency settings were appropriate in this case.

(ROA. 2842). In doing so, the District Court inferred meaning into the appraisal process, the findings of the appraisers, and the subjective conclusions they reached.

15

These findings required reliance on the appraisal award for matters expressly prohibited by the clear and unambiguous terms of the policy. (ROA. 1620). Commentary on subjective findings of the appraisers exceeded the limited purpose of appraisal to solely determine the "amount of loss." (ROA. 1620).

The District Court considered the appraisal award as conclusive findings, not mere probative evidence. See, *Burrell v. Allstate Prop. & Cas. Ins. Co.*, 2015 U.S. Dist. LEXIS 74473 at *3, No. 3:13-cv-493-CWR-FKB (S.D. Miss., June 9, 2015)(Appraisal is not tantamount to arbitration, it does not terminate the litigation); See also, *Munn v. National Fire Ins. Co.*, 237 Miss. 641, 646 (Miss. 1959)("The appraisers are not arbiters. They have no power to arbitrate disputes between the property owner and the insurance company other than to value the property damage.").

Ruling that acceptance of the appraisal award barred Young's breach of contract claim, the District Court relied on *Randel v. Travelers Lloyds of Tex. Ins. Co.*, 9 F. 4th 264, 267 (5th Cir. 2021). The District Court recognized *Randel* involved Texas law which has no application to this case. (ROA. 2837). "Because subject-matter jurisdiction in this case is premised upon diversity of citizenship, the Court applies Mississippi substantive law." (ROA. 2834); Citing, *Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F. 3d 252, 259 (5th Cir. 2010). Specifically, the Court in *Randel* addressed the Texas Supreme Court

16

decision of *Ortiz v. State Farm Lloyds*, 589 S.W. 3d 127, 129 (Tex. 2019) and other Texas cases addressing breach of contract claims under Texas statutory law.

For the conclusion that payment and acceptance of an appraisal award bars a breach of contract claim, the District Court cited one Mississippi case, *Sweet Valley Missionary Baptist Church v. Alfa Ins. Corp.*, 192 So. 3d 990 (Miss. 2016)(ROA. 2838). The only issue before the Mississippi Supreme Court in *Sweet Valley* was the Plaintiff's claim for prejudgment interest, following payment of the appraisal award. *Id*. *Sweet Valley* did not address extracontractual damage claims.

The District Court also cited *Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F. 3d 255 (5th Cir. 2017) for the position that "Courts have thus repeatedly rejected breach of contract claims when an insurer timely paid an appraisal award." *Id*. at 258. The "courts" referenced in this quote from *Mainali* exclusively addressed claims under Texas law.[5]

---

[5] See, *Quibodeaux v. Nautilus Ins. Co.*, 655 Fed. App'x 984, 986−87 (5th Cir. July 7, 2016)("**Under Texas law**, an insurer's timely payment of a binding and enforceable appraisal award, and the insured's acceptance of the payment, estops the insured from maintaining a breach-of-contract claim against the insurer")(emphasis added); *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 Fed. App'x 366, 368−69 (5th Cir. Jan. 24, 2012)("**Under Texas law**, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is estopped by the appraisal award from maintaining a breach of contract claim against the insurer.")(emphasis added); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 2017 Tex. App. LEXIS 4664, 2017 WL 2258243, at *3-4 (Tex. App.—Houston [14th Dist.] May 23, 2017, no pet. h.)(**Texas Court of Appeals**)(parenthetical added); *Garcia v. State Farm Lloyds*, 514 S.W.3d 257, 273−74 (Tex. App.—San Antonio 2016, pet. denied)(**Texas Court of Appeals**)(parenthetical added).

Mississippi law in this regard is well settled, "The award of the appraisers is pleaded in bar of the plaintiff's action, and such is not its effect; **the awards do not bar an action on the policies, but only fix the amount of recovery** thereunder in event the loss was partial." *Franklin Fire Ins. Co. v. Brewer*, 173 Miss. 317, 318 (Miss. 1935)(emphasis added). Highlighting the distinction between appraisal and arbitration, the Fifth Circuit noted: "In contrast, an appraisal determines only the amount of loss …." *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F. 2d 1058, 1061-1062 (5th Cir. 1990)(emphasis added). As a "non-judicial proceeding" appraisal is incapable of answering "questions of law" or any other "questions of fact." (ROA. 1620). "Liability is not fixed by means of an appraisal; there is only a finding of value, price, or amount of loss or damage." *Munn*, 237 Miss. at 646.

*Burrell* has persuasive application here. In that case, under Mississippi law, the court ordered the parties to complete appraisal. *Burrell*, 2014 U.S. Dist. LEXIS 137251 at *5 (S.D. Miss., Sept. 29, 2014). In lifting the stay post-appraisal, the *Burrell* Court recognized that appraisal does not resolve a breach of contract claim. *Burrell*, 2015 U.S. Dist. LEXIS 74473 *3 (S.D. Miss., June 9, 2015). Prior to trial, the Plaintiff in *Burrell* sought to exclude the appraisal award via a motion in *limine. Burrell*, 2016 U.S. Dist. LEXIS 102592 (S.D. Miss. Aug. 4, 2016). In denying the motion and bifurcating the trial, the court ruled:

18

> If the jury finds that Defendant (Allstate) is liable on the breach of contract claim, then the Court will consider in phase two Plaintiff's gross negligence and bad faith claims … including extra-contractual and punitive damages, if permitted. **Defendant would be able to put forth evidence in phase two of the appraisal award as a defense to Plaintiff's various claims** or to show there was a legitimate or arguable basis for not timely paying the total loss amount.

*Burrell*, 2016 U.S. Dist. LEXIS 102592 at *8-9. (emphasis added). As correctly noted by the *Burrell* court, the appraisal award is only a piece of evidence in an insurance breach of contract claim. *Id*.

The *Burrell* Court pointed out that, if the appraisal award was in excess of the policy limits that would be favorable evidence to the Plaintiff's breach of contract claim:

> Because the central issue to all of Plaintiff's claims is whether or not Defendant paid the correct amount afforded her under the policy, the appraisal award and process are relevant and admissible. … **If the jury finds that the loss was only partial**, then the appraisal may be prejudicial to her computation of damages, but it is not unfairly prejudicial. **If the appraisal award equaled or exceeded the policy limits, the Court doubts Plaintiff would argue for its exclusion**.

*Burrell*, 2016 U.S. Dist. LEXIS 102592, *2-3. (emphasis added). Similarly, Young alleged that but for State Farm's intentional use of the NC LES, her loss would have exceeded the policy limits. (ROA. 471).

From the outset, Young has sought all compensatory damages owed to her under the policy. (ROA. 488). The Appraisal Award of $329,616.98 does not represent all benefits owed and due to Young under the policy. (ROA. 1636). Pursuant to the Option ID – Increased Dwelling Limit coverage, State Farm is

19

obligated to Young for amounts over and above the Coverage A dwelling limits that were "actually and necessarily spent" to repair the damaged dwelling. (ROA. 527). Young specifically purchased this coverage as an additional endorsement for "up to $61,200." (ROA. 533). In its entirety, State Farm's Option ID clause reads:

> **Option ID – Increased Dwelling Limit.** *We* will settle losses to damaged *building structures* covered under **COVERAGE A – DWELLING** according to the **Loss Settlement Provision** shown in the *Declarations*.
> 1. If the amount *you* actually and necessarily spend to repair or replace the damaged *dwelling* exceeds the limit of liability shown in the *Declarations* for Coverage A – Dwelling, **we** will pay the additional amounts not to exceed the Option ID limit shown in the *Declarations*.

(ROA. 527)(emphasis and italics in original). Young "actually and necessarily spent" $369,797.59 to repair her home. This figure was reflected by the *invoices* submitted to State Farm by her contractor. (ROA. 907-52). Concerning this coverage, the District Court noted "as State Farm points out, Plaintiff's Option ID coverage is not mentioned anywhere in her Amended Complaint …" (ROA. 2841). However, as Young sought compensatory damages for all amounts owed her under the policy, she has clearly satisfied Fed. R. Civ. P. 8(a) notice requirements.

The District Court went on to hold that Young's claims for additional policy benefits have been universally resolved by acceptance of the Appraisal Award. (ROA. 2841). The Option ID – Additional Dwelling Limits coverage is not, however, mentioned anywhere in the policy's appraisal clause. (ROA. 514). Likewise, the policy's appraisal provisions make no mention of Option ID –

20

Additional Dwelling Limit. (ROA. 527). The appraisal award exceeded the available Coverage A dwelling limits by $2,808.98. (ROA. 1636). State Farm recognized that payment of the appraisal award above and beyond the available coverage, was made from Young's Option ID coverage. (ROA. 1797 at Fn. 13).

Because Young "actually and necessarily spent" $369,797.59 to repair or replace her damaged dwelling, State Farm is required to "pay the additional amounts not to exceed the Option ID limit shown in the declarations." (ROA. 907-52);(ROA. 527). Mississippi law concerning Option ID coverage is clear. *Ross v. State Farm Fire & Cas. Co.*, 2022 U.S. Dist. LEXIS 169425, No. 3:21-cv-470-KHJ-MTP (S.D. Miss., Sept. 20, 2022). In *Ross*, the plaintiff had asserted claims for breach of contract and bad faith for State Farm's incomplete payment of the policy proceeds, including Option ID benefits. *Id*. at *3-4. In denying summary judgment on the breach of contract claims, the Court noted that there existed genuine issues of fact concerning the plaintiff's entitlement to Option ID coverage. *Id*. at *9.

The recent decision by the Mississippi Supreme Court in *United Servs. Auto Ass'n v. Estate of Minor*, represents the most definitive statement of Mississippi bad faith law. *United Servs. Auto Ass'n v. Estate of Minor*, 2024 Miss. LEXIS 331,

No. 2023-CA-00049-SCT, (Miss., Dec. 5, 2024)(Rehearing denied by, *United Servs. Auto. Ass'n v. Est. of Minor*, 2025 Miss. LEXIS 277 (Miss., Oct. 2, 2025). [6]

*Estate of Minor* involved protracted litigation and two appeals stemming from a hurricane Katrina claim. Following the grant of partial summary judgment on the Minors' claims for punitive damage and extracontractual damages, the case proceeded to trial wherein the jury awarded the Minors $1,547,293.37 solely on their breach of contract claim. *Estate of Minor v. United Servs. Auto. Ass'n*, 247 So. 3d 1265, 1267 (Miss. Ct. App. 2017). On appeal, the Mississippi Court of Appeals reversed the grant of partial summary judgment and remanded the case for a second trial on the Minors' punitive and extracontractual damages claims. *Id*. at 1274. The Court of Appeals relied on evidence that USAA had misrepresented the contents of its claim file to the Minors and withheld policy benefits USAA failed to pay and/or delayed in making payment as being sufficient evidence to preclude summary judgment. *Id*. at 1272-74.[7]

Following a second trial, the Mississippi Supreme Court affirmed the jury's verdict of $10 million in punitive damages and rendered additional attorney's fees of $4.5 million. *United Servs. Auto Ass'n*, 2024 Miss. LEXIS 331 at ¶60. The

---

[6] Petition for Rehearing in *Estate of Minor* was not denied until after the District Court granted Judgment on the Pleadings. (ROA. 2847).
[7] Young asserted similar allegations and evidence in opposing Summary Judgment. (ROA. 2613 and 2644).

Mississippi Supreme Court's decision was despite resolution and payment of the breach-of-contract claims. *United Servs. Auto Ass'n*, 2024 Miss. LEXIS 331 at ¶17. Concerning the bad faith evidence presented at trial, Mississippi Supreme Court noted:

- USAA obtained an engineer's report that stated USAA was responsible for damages USAA never offered to pay;
- USAA's communications with the Minors were contradicted by the engineer's report and misrepresented the extent of the damages covered by the policy; and,
- USAA requested information from the Minors that was already in USAA's possession as a result of prior underwriting inspections.

(*Id*. at ¶¶ 33, 35-36). In affirming the verdict, the Court held,

> We find that the evidence presented at trial demonstrates the type of conduct for which punitive damages are designed. The Minor Estate provided sufficient proof that USAA acted in bad faith, with complete disregard for the Estate's rights. **The evidence presented at trial revealed that USAA wished to reap the benefits of the insurance policy premiums while depriving the Minor Estate the full benefits of that policy**.

*Id.* at ¶37. (emphasis added). *Estate of Minor* establishes, resolution of a breach of contract claim in favor of the policyholder, does not bar a claim for bad faith.

Here, the record evidence would have shown that State Farm's conduct in handling Young's claim was as egregious as that of USAA in *Estate of Minor*. (ROA. 2613 and 2644). State Farm lacked any legitimate or arguable basis to defend its' handling of Young's claim. At minimum, the record shows extensive disputed facts about whether State Farm's conduct was negligent, grossly negligent, or willful, and the issue of bad faith should be submitted to the jury.

23

*Stewart v. Gulf Guad. Life Ins. Co.*, 846 So. 2d 192, 200 (Miss. 2002); *Andrew Jackson Life Ins. Co. v. Williams,* 566 So. 2d 1172, 1185 (Miss. 1990)(Court affirmed compensatory and punitive damages award).

Payment of the appraisal award was tendered to Young without reservation. (ROA. 1636). Under Mississippi law, a check cannot be an accord and satisfaction if the check was not tendered with a conspicuous statement that acceptance would be an accord and satisfaction. Miss. Code Ann. § 75-3-311 (1993). None of the requisite facts necessary to establish accord and satisfaction were present in the pleadings and could not have been considered by the trial court under Fed. R. Civ. P. 12(c). The check was not offered with an accompanying conspicuous statement to indicate it was being offered in full accord and satisfaction of Young's claim. Nor did Young execute any release or settlement agreement. The letter transmitting payment is not of record in this case. The elements of an accord and satisfaction must be proven by clear and convincing evidence. See *McCarver v. Bogen*, 299 So. 3d 844, 848 (Miss. Ct. App. 2020)(Summary judgment not appropriate as accord and satisfaction was not proven by clear and convincing evidence).

### III.    Young has Stated a Claim for Negligence and Gross Negligence.

The District Court summarily concluded that because appraisal resolved Young's breach of contract claim, she had failed to articulate separate claims for negligence and gross negligence. (ROA. 2842-44).

24

The District Court relied on *Mixon v. Golden Rule Ins. Co.*, 2014 U.S. Dist. LEXIS 7760, No. 2:12-cv-234-KS-MTP (S.D. Miss., Jan. 22, 2014) for the finding that "negligence claims entirely duplicative of contractual claims are subject to dismissal." (ROA. 2843). In *Mixon*, the Court considered a summary judgment record which is clearly distinguishable as that Court later noted:

> In *Mixon*, the issue before the undersigned was **whether the defendant was entitled to summary judgment** based on the absence of a genuine dispute as to any material fact. **Here, the concern is whether the allegations of the Complaint, state a claim for relief that is sufficient to avoid dismissal under Rule 12(b)(6)**.

*Howard v. CitiMortgage, Inc.*, 2014 U.S. Dist. LEXIS 167842 *26, No. 1:13-cv-543-KS-MTP (S.D. Miss. Dec. 2, 2014)(emphasis added). In relying on *Mixon*, the District Court erred in considering a ruling on summary judgment evidence.

In *Howard*, the Court held that "[t]he breach of contract and negligence allegations before the Court are **certainly intertwined and mirror each other in many respects**. However, the Court does not find that the allegations are so duplicative that they essentially state the same cause of action." *Howard*, 2014 U.S. Dist. LEXIS 167842 at *25-26(emphasis added). The *Howard* court further noted, "Mississippi's highest court has held that a negligence claim may be founded on the breach of a legal duty arising from a contract." *Id.*, citing, *City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703, 711 (Miss.

25

2005)(Plaintiff may assert breach of contract and negligence claims arising from the same operative facts).

In another action, the Court denied an insurer's motion to dismiss, holding that claims for negligent claims handling are independently actionable. *Cheatham v. Allstate Vehicle & Prop. Ins. Co.*, 2021 U.S. Dist. LEXIS 179700, No. 3:20-cv-611-HTW-LGI (S.D. Miss., Sept. 21, 2021). The Court in *Cheatham* quoted the Complaint which alleged, Allstate had failed to adequately pay a covered claim by "manufacturing a reason that the claim is somehow not subject to appraisal constitutes negligent and outrageous conduct." *Cheatam,* 2021 U.S. Dist. LEXIS 179700 at *17-18. Based on these assertions, the Court held, the Plaintiff had satisfied the plausibility standard to plead a separate tort cause of action. *Id*. at *18.

Young's claims, while connected, are distinct with separate legal and factual basis. See *Howard*, 2014 U.S. Dist. LEXIS 167842 at *25-26. Young's claims arise from State Farm's intentional, wrongful, and unilateral deprivation of policy benefits and refusal to pay "the actual and necessary cost of covered repairs …" (ROA. 552). As a result of State Farm's conduct, Young was deprived of the benefits of her insurance policy, causing her significant financial hardship and precluding her home from being rebuilt to its pre-loss condition.

State Farm's act of manipulating the Xactimate software to suppress the value of the "actual and necessary cost of covered repairs" form the basis of her

26

negligence and gross negligence claims. (ROA. 552);(ROA. 464-74). This intentional act was in violation of its duty to Young "to fully, fairly, adequately, and correctly investigate and adjust Plaintiff's loss and claim" and evidenced an intent to "reap the benefits of the insurance policy premiums while depriving (Young) the full benefits" of her policy." (ROA. 483); *United Servs. Auto Ass'n,* 2024 Miss. LEXIS 331 at ¶37(parenthetical added). State Farm's conduct was intentional, and without an arguable basis other than to deprive Young of money she was owed.

### IV.   The District Court Erred in Taking up State Farm's Motion for Judgment on the Pleadings instead of its Motion for Summary Judgment and Young's Motion for Class Certification.

The District Court's grant of Judgment on the Pleadings was entered after the close of discovery, after Young had filed her motion for class certification, and after State Farm filed its motion for summary judgment. (ROA. 1565, 2032, 2159, 2218, and 2547);(See Fn. 3 *Supra*.). After the Motion for Judgment on the Pleadings was fully briefed, Young by unopposed motion, sought a stay of discovery and pre-trial deadlines pending resolution of the dispositive motion on May 14, 2025. (ROA. 1831). On May 15, 2025, the Court denied the Stay by written Order. (ROA. 1837).

Throughout July and August 2025, the parties participated in protracted and extensive discovery and motion practice. Young filed her Motion to Certify Class

27

and State Farm filed its Motion for Summary Judgment. (ROA. 2032 and 2159);(ROA. 2218 and 2547). State Farm deposed Young's expert witnesses. (ROA. 2597, 2600, 2606, and 2609). Five days prior to the deadline for Young's Reply in Support of Class Certification and the deadline for State Farm's Reply in Support of Summary Judgment, the Court granted Judgment on the Pleadings. (ROA. 2826 and 2847).

In granting State Farm's Rule 12(c) Motion, the Court was limited "to the content of the pleadings, including attachments thereto." (ROA. 2833); quoting, *Bosarge v. Miss. Bureau of Narcotics*, 796 F. 3d 435, 440 (5th Cir. 2015). In disposing of the case based on the pleadings, the District Court declined to and was prohibited from consideration of the evidentiary record before it.

In reversing a District Court's grant of Judgment on the Pleadings, the First Circuit Court of Appeals in *Grajales v. P.R. Ports Authority*, ruled:

> Under ordinary circumstances, a court may measure the plausibility of a complaint by means of a motion for judgment on the pleadings. (citations omitted). **We have not, however, spoken to the question of whether it is appropriate to apply the plausibility standard after substantial pretrial discovery has taken place.** An obvious anomaly arises in such a situation because a court attempting to determine whether a complaint should be dismissed for implausibility must decide, on the basis of the complaint alone, if the complaint lacks enough factual content to allow a reasonable inference that the defendant is liable for the misconduct alleged. (citations omitted). **This is, by its nature, a threshold inquiry, and logic strongly suggests that it occur prior to discovery. Ignoring the entire panoply of facts developed during discovery makes little sense.**

28

*Grajales v. P.R. Ports Auth.*, 682 F. 3d 40, 46 (1st Cir. 2012)(emphasis added). The

Court noted:

> An artificial evaluation of this sort seems especially awkward because one of the **main goals of the plausibility standard is the avoidance of unnecessary discovery. Applying the plausibility standard to a complaint after discovery is nearly complete would defeat this core purpose**.

*Id*. (emphasis added). citing, *Twombly*, 550 U.S. at 556-558); *Atkins v. City of*

*Chicago*, 631 F. 3d 823, 832 (7th Cir. 2011).

The  *Grajales* court held that "[w]hile district courts enjoy broad discretion

in managing their dockets, we think that, once the parties have invested substantial

resources in discovery, a district court should hesitate to entertain a Rule 12(c)

motion that asserts a complaint's failure to satisfy the plausibility requirement."

*Grajales*, 682 F. 3d at 46.

While the holding in *Grajales* has not been expressly adopted by the Fifth

Circuit, a number of its District Courts have relied on it in reaching similar rulings.

In *Madrid v. Wells Fargo Bank, N.A.*, the Western District of Texas denied

Judgment on the Pleadings, finding:

> It is reasonable to expect that by now, the parties have developed the facts relating to their claims and defenses. The parties have filed other motions, pleadings, exhibits and submissions, which appear to include facts that are not expressly stated in Plaintiffs' Third Amended Complaint, but tend to provide additional details regarding Plaintiffs' certain generalized allegations. **It would seem to be a mechanical, perfunctory exercise to ignore such facts and dismiss Plaintiffs' claims for want of sufficient factual allegations at this stage of litigation**.

*Madrid v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 221452 \*8, No. EP-14-152-DCG (W.D. Tex. March 17, 2017)(emphasis added).

The Southern District of Texas noted, "Courts have cast doubt on the validity of Rule 12(c) motions filed after substantial or completed discovery." *Thompson v. Wal-Mart Stores Tex., LLC*, 706 F. Supp. 3d 689, 696 (S.D. Tex., Dec. 13, 2023); Citing, *Grajales*, 682 F. 3d 40, 46 (1st Cir. 2012).

Denying a Rule 12(c) motion in a defamation case, the Western District of Texas cited *Thompson*, *Grajales*, and others, stating,

> [T]he Court is similarly hesitant to entertain a Rule 12(c) motion at this stage in the litigation. (Defendant) moved for judgment on the pleadings over a month after the discovery deadline and **after the parties conducted two depositions**. It would make little sense to ignore the facts developed during discovery and measure (plaintiff's) defamation claim under the plausibility standard which is a threshold inquiry.

*Uzoh v. Walmart Assocs.*, 2024 U.S. Dist. LEXIS 190722 at \*5, No. 1-23-cv-966-JRN (W.D. Tex., Oct. 21, 2024)(emphasis and parentheticals added).[8] See also, *Antero Re. Corp. v. C & R Downhole Drilling, Inc.*, 2019 U.S. Dist. LEXIS 244246, No. 4:16-cv-668-Y (N.D. Tex., Sept. 13, 2019)(Within Court's discretion to deny a Rule 12 where extensive discovery had already occurred).

The quantum of discovery conducted prior to and following the filing of State Farm's Motion for Judgment on the Pleadings justified the issuance of a stay

---

[8] When State Farm filed its Motion for Judgment on the Pleadings on February 10, 2025, the parties had taken four depositions with others scheduled. (ROA. 1534, 1537, 1540, 1543, 1546, 1552).

of discovery and other pre-trial deadlines. See *Hicks v. United States*, 2025 U.S. Dist. LEXIS 177737, No. 24-395-SDD-RLB (M.D. La., Sept. 11, 2025). Additionally, the parties had conducted far more discovery than the two deposition in *Uzoh*, 2024 U.S. Dist. LEXIS 190722 at *5. Following conclusion of discovery, vast briefing on the class certification and summary judgment motions was filed. (ROA. 2032, 2159, 2218, 2547, 2613, 2644, 2716, 2761). As in *Thompson*, the District Court should have denied the Motion for Judgment on the Pleadings and instead considered the evidentiary record. *Thompson*, 706 F. Supp. 3d at 697.

Bankruptcy Courts in the Fifth Circuit have similarly adopted the holding in *Grajales*, and held that once a case proceeds into discovery, Courts should be hesitant in considering a Rule 12(c) motion. See, *In re Waggoner Cattle, LLC*, 2022 Bankr. LEXIS 2873, Civil Action No. 2:19-cv-98-Z (N.D. Tex., Apr. 28, 2022)(Following completion of discovery, the "appropriate avenue at this stage of litigation is through a motion for summary judgment or trial.").

It was within the District Court's discretion to forego ruling on State Farm's Motion for Judgment on the Pleadings and to consider the full record before it. The parties expended significant resources on extensive discovery, expert witnesses, and preparing extensive briefing. In granting Judgment on the Pleadings, the District Court ignored the "entire panoply of facts developed during discovery."

*Grajales*, 682 F. 3d at 46. In doing so, the Court abused its discretion and the Judgment on the Pleadings should be reversed.

**V.    State Farm lacks an arguable basis to adjust partial loss structural damage claims using new construction labor efficiency setting.**

The District Court disposed of Young's bad faith claim finding that State Farm had "advanced an arguable basis for its decision to use the NC LES in adjusting her claim." (ROA. 2844-45). In doing so, the District Court relied on State Farm's "**determination** that the damage to Plaintiff's property was so extensive that it qualified as a total loss." (ROA. 2844)(emphasis added). To be clear, Young's loss was never totaled, that *determination* was never made, and the Court's conclusion to the contrary was, respectfully, in error. State Farm determined Young's loss was partial and issued an estimate to *rebuild* the home in the amount of $254,656.75. (ROA. 2830).

Mississippi Courts have defined "total loss" as being:

> In only remains to be said that **substantial parts of a building must remain in place, above the foundation, in order to prevent the destruction of the building from being total**. **If only the foundation of the building remains in place, the building is totally destroyed within the meaning of the policies**, although some parts of the building remain in such condition as to be of value as salvage.

*Home Ins. Co. v. Greene*, 229 So. 2d 576 (Miss. 1969) (emphasis added). In describing a partial loss, the Court in *Greene* went on to say, "there must be a substantial, usable remnant of the building surviving. The substantial part of the

structure in place **must be susceptible to reasonable repairs and reconstruction**." *Id*. at 579 (emphasis added).

Young undisputedly suffered a loss that by the Mississippi Supreme Court's definition, was neither a total loss or new construction. (Doc. 132-9). The District Court quoted a portion of the Xactware whitepaper which states:

> The New Construction option provides a cost for each line item based upon the most efficient labor productivity available. This option is intended to be used for true new construction applications or for jobs in which a total "ground-up" rebuild is necessary. *Additionally, it is possible that some portions of a large partial loss may be addressed using this efficiency setting.*

(ROA. 2844)(emphasis in original). The District Court failed to acknowledge that in adjusting Young's claim, State Farm did not estimate "portions" of her "large partial loss" using the NC LES but rather adjusted the entire claim using the NC LES. (ROA. 2844 and 554-619).

The District Court quoted the Whitepaper on NC LES but omitted the software creator's narrow application of the setting: "For example, as the rebuild process progresses, it is possible that a **certain phase** may be reached in which the **remaining portions of the repair** are more in line with a new construction scenario." (ROA. 544)(emphasis added). Xactimate provides no definition of a "large partial loss." Nor does Xactimate elaborate on how "portions" of a large partial loss may be adjusted using the NC LES. State Farm likewise does not define "large partial loss" in its policy. (ROA. 56-94).

33

It is well settled that "[a]mbiguities (in insurance policies) must be construed in favor of the insured." *United State Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956 (Miss. 2008)(parentheticals added).[9] State Farm ignored Xactware's guidance and wrote a single estimate for the entirety of the loss exclusively using the NC LES. (ROA. 554-619).

Because Young's Amended Complaint alleged that her home was extensively damaged and was "practically destroyed in the loss" the District Court held that "Plaintiff herself ***appears*** to concede that such a determination was, at the very least, arguably justified." (ROA. 2844-2855)(emphasis added). Because of these statements, the Court held Young could not state a claim that State Farm lacked any arguable basis for its decision. (ROA. 2855)(quotations omitted).

Respectfully, the District Court erred in this holding. Appraisal cannot dispose of a claim of bad faith. "The insurer's mere invocation of the appraisal provision, at some point during the dispute, does not immunize it from liability for a claim of bad faith. Bad faith conduct may occur before, during, and after the

---

[9] *Cont'l Cas. Co. v. Allstate Prop. & Cas. Ins. Co.*, 235 So. 3d 40, 50 (Miss. 2017)("Ambiguities exist when an insurance policy can logically be interpreted in two or more ways.")(quoting *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). "[I]n interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Miss. Farm Bureau Cas. Ins. Co. v. Powell*, 336 So. 3d 1079, 1084 (Miss. 2022); quoting *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998) (citing *Cont'l Cas. Co. v. Hester*, 360 So. 2d 695, 697 (Miss. 1978)).

appraisal process." *Andres Trucking Co. v. United Fire & Cas. Co.*, 488 P. 3d 425 (Colo. Ct. App. 2018).

In *Kuehn*, the District Court denied dismissal based on appraisal, holding that "[p]laintiffs' claim for attorneys' fees and for other extracontractual damages [would] be resolved in subsequent proceedings." *Kuehn v. State Farm Fire & Cas. Co.*, 2009 U.S. Dist. LEXIS 74691, No. 1:08-CV-577-LTS-RHW (S.D. Miss. Aug. 17, 2009). As the *Kuehn* court noted, an appraisal award does not dispose of claims for extracontractual damages.

In *Edwards v. Guideone Mut. Ins. Co.*, 2010 U.S. Dist. LEXIS 34223 *9-10 (S.D. Miss., April 7, 2010), the Court ordered the plaintiffs to submit to appraisal but denied the insurer's motion for summary judgment over its claims handling noting "[t]his is a jury issue." *Edwards*, *Burrell* and *Kuehn* all recognize that while appraisal may be enforceable, and any resulting award admissible evidence, appraisal does not preclude claims for breach of contract, bad faith or negligence.

The Southern District of Indiana recently denied partial summary judgment in a nearly identical case, involving State Farm's use of the NC LES on partial losses. *Skender v. State Farm Fire & Cas. Co.*, 2024 U.S. Dist. LEXIS 27196, Cause No. 1:22-cv-02054-JMS-KMB (S.D. Ind. 2024). In doing so, the Court in *Skender* noted State Farm's four-month delay in issuing an estimate and State

35

Farm's insistence in using the NC LES even though it demanded that portions of the home be salvaged. *Id*. at ¶ 29-30.

Mississippi law requires a Plaintiff to prove (1) its insurer lacked any arguable or legitimate basis to deny coverage and (2) that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Holloway v. Nat'l Fire & Marine Ins. Co.*, 360 So. 3d 671, 674-75 (Miss. Ct. App. 2023); See also, *United Servs. Auto Ass'n*, 2024 Miss. LEXIS 331 at ¶31. Quoting, Miss. Code Ann. § 11-1-65(1)(a)(Rev. 2019). The record shows substantial evidence that State Farm not only applied NC LES without any clear and unambiguous policy basis, but also negligently and intentionally mishandled Young's claim.

Concerning the use of NC LES on partial losses, Xactware (through its online customer service chat) communicated with Young's contractor stating: **"New Construction should only be used when you are starting from nothing**, that's correct. What this does is it changes the Labor rates. Remodel and mitigation labor rates are much different than new construction." (ROA. 2136)(emphasis added). This statement alone precluded summary judgment as there exists a disputed question of fact as to the correct application of the NC LES.

The District Court's grant of Judgment on the Pleadings is also inconsistent with this district's prior rulings on similar issues. In *Jones*, the District Court

addressed a UM bad faith claim involving an automated claims handling tool, referred to as the "Mitchell DecisionPoint" program that was relied upon by the insurer. *Jones v. State Farm Mut. Auto. Ins. Co.*, 2025 U.S. Dist. LEXIS 133204 at *13, No. 1:23-cv-326-HSO-RPM (S.D. Miss. July 14, 2025). A component of this tool was the pricing module, which reduced reimbursement for medical bills by a standardized amount. *Id*. Similarly, the NC LES in Xactimate is a standard pricing module that, "provides a cost for each line item based upon the **most efficient labor productivity available**." (ROA. 544)(emphasis added).

The Plaintiff in *Jones* alleged that State Farm reduced medical bills based solely upon the standard pricing module and not with consideration of the bills' merits. *Jones*, 2025 U.S. Dist. LEXIS 133204 at ¶15. Denying partial summary judgment, the Court stated,

> State Farm has not pointed to any medical evidence or documentation, if any exists, it used to determine that Jones's medical bills should be reduced. In the Court's view, that raises the inference that Mitchell DecisionPoint's **pricing module was the exclusive basis upon which Fricke (adjuster) reduced Jones's reimbursement**. If true, that appears to be at odds with State Farm's stated practice of evaluating each claim on its own merits.

*Id*. at 15 (emphasis added). State Farm's ACV payment to Young matched its estimate exactly. (ROA. 552). State Farm's **entire** estimate was generated utilizing the NC LES and formed the sole basis of its ACV determination. (ROA. 554).

In *Jones*, State Farm emphasized the claims handler's discretion, arguing that "the claim specialist retains full discretion when evaluating the claim, and the

37

values suggested by the Mitchell program are not mandatorily applied." *Jones*, 2025 U.S. Dist. LEXIS 133204 at ¶15-16. In *Jones*, State Farm referred to the Mitchell program as, "just a tool that we use in our evaluation of the medical bill." *Id*. at ¶ 14. In denying partial summary judgment, the District Court held, "there remains a factual question as to whether (adjuster) did handle (Plaintiff's) claim on its own merits, or indeed whether, as Plaintiff claims, she simply reduced his medical reimbursement" based on the Mitchell program. *Jones*, 2025 U.S. Dist. LEXIS 133204 at ¶ 14.

*Jones* has persuasive application here. As in *Jones*, State Farm argues that because Young's insurance policy does not require State Farm to use a specific estimating software or a specific setting within an estimating software, it is free to use the software of its choosing in the manner it deems appropriate. (ROA. 2555). But, as noted in *Jones*:

> Further, if exclusive reliance upon Mitchell DecisionPoint's pricing module was **permissible under Jones's Policy, State Farm has not pointed to any provision authorizing it.** If (adjuster) reduced (Plaintiff's) claim based exclusively upon the Medicare reimbursement rate—and without further evaluation of the medical bills or additional evidence rebutting their reasonableness—then, in the Court's view, there remains a genuine dispute as to whether State Farm had "any arguable basis" for (adjuster's) decision to reduce (Plaintiff's) coverage under the UM policy. That is sufficient to deny summary judgment.

*Jones*, 2025 U.S. Dist. LEXIS 133204 at ¶17. (parentheticals added).

38

As in *Jones*, Young directly challenges the reasonableness of State Farm's decision making when it was based exclusively on Xactimate's NC LES pricing module. When an insurer makes claims handling decisions relying not on the collaborative process with the insured or their contractor, but **solely on arbitrary software selections**, the software is no longer guidance but a determination by the insurer. *Jones*, U.S. Dist. LEXIS 133204. In arbitrarily applying the NC LES, on the entirety of Young's claim, State Farm based its claim decision solely on arbitrary software selections. This practice is inconsistent with guidance provided by Xactware and is not supported by its policy. State Farm lacked any arguable basis to adjust Young's claim in this matter.

## CONCLUSION

For the reasons set forth herein, the District Court erred in Compelling Appraisal and in Granting State Farm's Motion for Judgment on the Pleadings. Appellant Gloria Celeste Young respectfully requests that the Judgment on the Pleadings be reversed and the case remanded to the District Court for further proceedings.

SUBMITTED BY:

*/s/Ned Andrew Nelson*
Nelson Law PLLC
7 Woodstone Plaza, Ste. 7
Hattiesburg, MS 39402
*Counsel for Appellant*

39

## CERTIFICATE OF SERVICE

I certify that on December 1, 2025, the foregoing document was electronically filed with the Clerk of the Court using the ECF system which will provide notice to all counsel of record, and emailed an electronic copy to all counsel.

*S/Ned Andrew Nelson*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 9638 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

*S/Ned Andrew Nelson*